IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD HELM and DIANA HELM,<br>　　　Plaintiffs<br><br>v.<br><br>ALLSTATE PROPERTY AND<br>CASUALTY INSURANCE COMPANY,<br>　　　Defendant | :<br>:　　CIVIL ACTION NO. 12-6777<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM OPINION AND ORDER**

**Rufe, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**August 15, 2013**

Plaintiffs have filed this suit against their homeowners insurance carrier, alleging that the insurer failed to fully compensate them for covered losses, and asserting claims of breach of contract and bad faith. The parties have completed discovery, and Defendant has filed this motion for partial summary judgment, seeking dismissal of the bad faith claim. For the reasons set forth herein, the motion will be granted.

**I.　　FACTUAL BACKGROUND**

On or about July 8, 2011, Plaintiffs' home at 5 Brookdale Drive in Doylestown, Pennsylvania was damaged by accidental discharge of water from the plumbing system. Specifically, Plaintiffs noticed water was leaking through the kitchen ceiling after their son flushed the toilet upstairs and it overflowed.[1] Plaintiffs retained Claims Worldwide, which contracted with Comprehensive Damage Assessment ("CDA") to inspect the loss and prepare an estimate of the cost of repairs necessary to restore the home to its previous condition. CDA

---

[1] Doc. No. 9, Ex. F at ¶9; Richard Helm Dep. 37:3-4.

employee Dan Boruta conducted an inspection and prepared an estimate. He estimated that repairs to the kitchen, bathroom, and family room would cost $48,816.09.[2]

At the time the water damage occurred, Plaintiffs' home was covered by a homeowners insurance policy issued by Defendant Allstate Property & Casualty Company.[3] On January 27, 2012, Defendant's claims representative, Julie Sandberg, inspected the property and prepared an estimate. Claims Worldwide, on Plaintiffs' behalf, submitted a sworn proof of loss to Defendant on February 21, 2012.[4] At Defendant's request, the proof of loss was resubmitted on April 13, 2012[5] and September 19, 2012.[6] In a letter dated October 9, 2012, Sandberg notified Claims Worldwide that, based upon her inspection, it was Defendant's position that much of the claimed damage was not attributable to the July 8, 2011 event, but rather, was caused by a separate event stemming "from another bathroom or source."[7] Defendant concluded that the kitchen ceiling required only minor repairs for water damage due to the July 8, 2011 loss.[8] Sandberg estimated the cost of repairs to the kitchen ceiling at less than $1000, and because Plaintiffs' policy had a $1000 deductible, no payment was issued to Plaintiffs.[9]

---

[2] Doc. No. 11, Ex. A. The estimate included the cost of new cabinetry ($12,790), flooring ($4,798), and decorating ($2,546), among other charges, for the kitchen, and the cost of replacing the ceramic wall tiles in the bathroom ($6,640).

[3] Doc. No. 9, Ex. B1-B2.

[4] Doc. No. 11, Ex. B.

[5] Doc. No. 11, Ex. E.

[6] Doc. No. 11, Ex. F.

[7] Doc. No. 11, Ex. G.

[8] Id.

[9] Id.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[10] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[11] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[12] A party asserting a fact is genuinely disputed must support the assertion by citing to materials in the record or showing that the materials cited do not contain admissible evidence to support the fact.[13] In considering a summary judgment motion, the Court does not weigh the evidence or make credibility determinations; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[14]

## III. DISCUSSION

"A recovery for bad faith requires clear and convincing evidence of bad faith, rather than mere insinuation, and a showing by the insured that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its

---

[10] Fed. R. Civ. P. 56(a).

[11] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[12] Id.

[13] Fed. R. Civ. P. 56(c).

[14] Anderson, 477 U.S. at 255.

lack of a reasonable basis in denying the claim."[15] The plaintiff "must show that the insurer breached its duty of good faith through some motive of self-interest or ill-will."[16]

Plaintiffs acknowledge that Defendant conducted a timely inspection of Plaintiffs' home and a timely investigation of their claim.[17] Plaintiffs testified that they did not know whether the physical inspection and the claim investigation were reasonable or unreasonable,[18] and have put forth no expert testimony or other evidence indicating that the inspection and investigation were inadequate, incomplete, or unreasonable.[19] Plaintiffs also testified that they knew of no facts that supported their allegation that Defendant made misrepresentations to the Plaintiffs about their claims.[20] Finally, Richard Helm admitted that his belief that Defendant treated him with bias or ill-will might be tainted by his own prior experiences with the company,[21] and Dianna Helm testified that she did not believe Defendant acted with any ill will or malice regarding the claim.[22]

---

[15] MGA Ins. Co. v. Bakos, 699 A.2d 751, 754 (Pa. Super. Ct. 1997); see also Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688-90 (Pa. Super. 1994).

[16] Condio v. Erie Ins. Exch., 899 A.2d 1136, 1142-43 (Pa. Super. Ct. 2006) (internal quotation marks and citation omitted).

[17] See Richard Helm Dep. 30:1-4 [Doc. No. 9, Ex. G]; Dianna Helm Dep. 22: 16-19 [Doc. No. 9, Ex. H]. Defendant states that the loss at issue was reported on January 12, 2012, and Defendant conducted its inspection on January 27, 2012. Mem. of Law in Support of Motion [Doc. No. 9] at 3.

[18] R. Helm Dep. 30:10-16, D. Helm Dep. 22:24-23:2.

[19] For example, under the terms of the policy, Defendant could have taken statements from Plaintiffs in the course of the claim investigation. Plaintiffs conclude, without support, that the failure to do so amounted to a failure to conduct a "complete" investigation, and is indicative of bad faith.

[20] R. Helm Dep. 30:5-9, D. Helm Dep. 22:20-23, 23:3-5.

[21] R. Helm Dep. 30:17-25.

[22] D. Helm Dep. 23:6-9.

It appears Plaintiffs conclude that Defendant acted in bad faith based primarily on the fact that Defendant's estimate did not take into account repairs Plaintiffs believed were warranted.[23] However, the record, even when viewed in the light most favorable to Plaintiffs, does not support a finding that Defendant intentionally ignored certain areas of damage or otherwise demonstrated corrupt motive sufficient to sustain a bad faith claim.[24] The evidence reflects a genuine disagreement as to the *cause* of certain issues found in Plaintiffs' home, and thus on the value of Plaintiffs' claim.

Plaintiffs point to no evidence from which the Court can find that Sandberg's inspection was conducted in bad faith, or that her conclusion that the July 8, 2011 toilet overflow did not cause all of the damage for which insurance coverage was sought was arrived at in bad faith. In the absence of any evidence that Sandberg's investigation was conducted improperly or in bad faith, the Court finds that Sandberg's inspection and her conclusions provided evidence on which Defendant could justifiably and reasonably rely to substantiate its lower estimate of the cost of repairs. Even assuming Sandberg's conclusions were incorrect and directly contrary to the physical evidence,[25] as Plaintiffs assert without record support, Plaintiffs have put forth no evidence suggesting that Defendant knew that it lacked a reasonable basis for its actions, or acted with reckless disregard for its lack of reasonable basis.

---

[23] See D. Helm Dep. 22:9-15 . Plaintiffs also note that they were asked to resubmit their proof of loss twice, and argue that this is evidence of bad faith. However, Plaintiffs point to no evidence that the resubmissions were requested based on ill-will or other improper motive, and the Court finds this insufficient to state a claim for bad faith, especially in light of the fact that both Plaintiffs testified that their claim was investigated in a timely manner.

[24] See Bostick v. ITT Hartford Grp., Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999).

[25] The Court makes no ruling with regard to whether Sandberg's conclusions were correct, which is the basis for the breach of contract claim.

## IV. CONCLUSION

Because the Court finds that Plaintiffs have failed to produce any evidence creating a genuine issue of material fact as to whether Defendant acted in bad faith when adjusting Plaintiffs' claim, the Court will grant the Motion for Partial Summary Judgment and dismiss Plaintiffs' bad faith claim. Plaintiffs may proceed with the prosecution of their breach of contract claim. An appropriate Order follows.